**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **ANNA BOHANNON,** ) | **CASE NO. 1:14CV1446** |
| ) | |
| **Plaintiff,** ) | **MAGISTRATE JUDGE** |
| ) | **GEORGE J. LIMBERT** |
| **v.** ) | |
| ) | |
| **CAROLYN W. COLVIN**[1]**,** ) | **MEMORANDUM OPINION & ORDER** |
| **ACTING COMMISSIONER OF** ) | |
| **SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

Anna Bohannon ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the Administrative Law Judge's ("ALJ") decision and dismisses Plaintiff's case with prejudice.

**I.   PROCEDURAL AND FACTUAL HISTORY**

Plaintiff first applied for DIB and SSI on October 18, 2006, alleging disability beginning July 24, 2006 due to a torn rotator cuff of the right shoulder, chronic back pain, bilateral knee/ankle pain, left shoulder tendinitis, bilateral carpal tunnel syndrome ("CTS") and depression. ECF Dkt. #12 ("Tr.") at 525-533, 705. The SSA denied Plaintiff's applications initially and on reconsideration. *Id.* at 197-200, 312-323. Plaintiff requested an administrative hearing and on December 8, 2008, 2012, the ALJ conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 177-196, 326. At that hearing, Plaintiff's counsel moved to amend her request for DIB and SSI to a closed period of disability from July 24, 2006 through August 2007 when Plaintiff was principally dealing with a right shoulder tear. *Id.* at 181-183. On December 12, 2008, the ALJ issued a Decision finding that Plaintiff was disabled under the Social Security Act and therefore was entitled to DIB and SSI from April 11,

---

[1] On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

2006 through April 11, 2007. *Id.* at 206-213. However, he found that beginning on April 12, 2007, Plaintiff experienced medical improvement such that she had the residual functional capacity ("RFC") to perform the full range of light work and could return to her past relevant work as a bank teller as of that date. *Id.*

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, explaining that she did not understand at the time of the hearing when she amended her request to include a closed period of disability that she was not entitled to continued benefits after the one-year period. Tr. at 343, 815. On December 11, 2009, the Appeals Council granted Plaintiff's request for review and remanded her case to the ALJ to reconsider the issue of medical improvement, evaluate Plaintiff's subjective complaints, and further consider Plaintiff's maximum RFC and if necessary, obtain the testimony of a VE. *Id.* at 225.

On September 10, 2010, the ALJ held another hearing, with Plaintiff, her attorney, and a VE participating. Tr. at 135-176. On May 16, 2011, the ALJ held a supplemental hearing with Plaintiff present and represented by counsel, and with a medical expert ("ME") and VE present. *Id.* at 122-133. Only the ME testified. *Id.* at 126-133. On June 13, 2011, the ALJ issued a partially favorable decision, determining that Plaintiff was entitled to a period of disability bnefits from April 6, 2006 through April 15, 2007. *Id.* at 233-239. However, the ALJ further found that after April 15, 2007, Plaintiff's condition improved such that she could perform light work with the limitations of avoiding overhead use of her right shoulder, occasional reaching with her right upper extremity from waist to shoulder level, and she should avoid exposure to heights, hazardous machinery, and temperature extremes and pollutants. *Id.* at 233-239. The ALJ determined that with this RFC, Plaintiff could perform her past relevant work as a bank teller and therefore was not entitled to DIB or SSI after April 15, 2007. *Id.* at 239.

Plaintiff requested that the Appeals Council review the ALJ's Decision, and on June 22, 2012, the Appeals Council affirmed the ALJ's determination that Plaintiff was disabled from April 6, 2006 through April 15, 2007. Tr. at 308. However, the Appeals Council granted Plaintiff's request for review and vacated the ALJ's decision concerning the period beginning April 15, 2007 and remanded her case for the ALJ to:  consider two treating source opinions from Dr. Krajcik;

-2-

consider whether Plaintiff has a mental impairment; further consider whether Plaintiff experienced medical improvement and cite to findings supporting such a determination if found again; and reconsider Plaintiff's credibility and provide proper citation to specific record evidence supporting a credibility determination. *Id*. at 308-309.

On August 1, 2011 and August 3, 2011 respectively, Plaintiff filed applications for SSI and DIB alleging disability beginning June 14, 2011 due to torn rotator cuff on the right shoulder, arthritis, depression, a bad back, and knee and ankle pain. Tr. at 566-579. The SSA denied Plaintiff's applications initially and on reconsideration. *Id*. at 418-451. Plaintiff requested a hearing before an ALJ and on January 17, 2013, an ALJ held a hearing with Plaintiff present and represented by counsel. *Id*. at 117. The ALJ informed Plaintiff and her counsel at the hearing that because Plaintiff had filed the two most recent applications, he was going to incorporate those applications with her and with prior applications that were still pending concerning whether sufficient medical improvement had occurred as of April 15, 2007. *Id*. at 119. The ALJ rescheduled the hearing after determining that the two most recent applications would be incorporated into the old applications that were still pending and noting that he wanted to have a ME at the hearing. *Id.* at 120.

On March 4, 2013, the ALJ held another hearing, with Plaintiff present and represented by counsel, and with a ME and VE present, with Plaintiff, the ME and VE testifying. Tr. at 84-115.

On April 9, 2013, the ALJ issued a decision finding that Plaintiff's disability ended as of April 15, 2007 and as of that date, Plaintiff could perform a significant number of jobs existing in the national economy. Tr. at 58-60. On April 18, 2013, Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. *Id*. at 52. On May 10, 2014, the Appeals Council denied Plaintiff's request for review. *Id.* at 11-14.

On July 1, 2014, Plaintiff filed the instant suit seeking review of the ALJ's Decision. ECF Dkt. #1. On September 19, 2014, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #14. On November 17, 2014, Plaintiff filed a brief on the merits. ECF Dkt. #16. On December 17, 2014, Defendant filed a brief on the merits. ECF Dkt. # 17.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that the most recent favorable medical decision finding that Plaintiff was disabled was the decision dated June 13, 2011, which was the the "comparison point decision" ("CPD"). Tr. at 48. The ALJ further found that at the time of the CPD, Plaintiff had the impairments of status post repair surgeries for right shoulder rotator cuff tear and history of adjustment disorder. *Id*. He noted that Plaintiff's physical impairments were found to result in a RFC to perform less than a significant range of even sedentary work and Plaintiff was incapable of performing sustained work activities in an ordinary work setting on a regular and continuing basis from April 6, 2006 through April 15, 2007. *Id*. at 48-49.

The ALJ further found that since April 15, 2007, Plaintiff had the impairments of degenerative arthritis of the right shoulder, status post arthroscopic surgery for rotator cuff tear, degenerative arthritis of the left knee, and adjustment disorder with anxiety and depression, which constitute severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.927(c). Tr. at 49. The ALJ concluded that since April 15, 2007, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926. ("Listings"). *Id*. at 51-52. He further determined that medical improvement had occurred as of April 15, 2007 and it was related to Plaintiff's ability to work because it resulted in an increase in her RFC. *Id*. at 52.

The ALJ found that beginning on April 15, 2007, Plaintiff had the RFC to perform light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following additional limitations: no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; occasional overhead reaching with the right arm; avoidance of hazards such as heights, machinery, and commercial driving; and she can perform tasks in a low stress environment, meaning no high production quotas or fast pace requirements. Tr. at 53-57. The ALJ further found that beginning on April 15, 2007, Plaintiff was unable to return to her past relevant work as a vault teller, bank teller or head teller. Tr. at 57. He found that considering Plaintiff's age, education and work experience, as well as the RFC and the testimony

of the VE, Plaintiff could perform a significant number of jobs existing in the national economy, including the representative occupations of light gate guard and light cafeteria attendant. *Id*. at 58-59. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to DIB or SSI. *Id.* at 59.

### III.   STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.  LAW AND ANALYSIS

### A.  TREATING PHYSICIAN'S OPINIONS

Plaintiff first asserts that the ALJ failed to give appropriate weight to the opinions of Dr. Krajcik, her treating physician, when the ALJ determined her RFC. ECF Dkt. #16 at 13-17. For the following reasons, the Court finds that the ALJ properly evaluated Dr. Krajcik's opinions and substantial evidence supports his decision to give them little weight.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians. SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). A presumption exists that the opinion of a treating physician is entitled to great deference. *Id.*; *Rogers, supra*, at 243. If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a

-6-

claimant's conditions is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore " 'be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied.' " *Wilson,* 378 F.3d at 544 quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243, citing *Wilson*, 378 F.3d at 544.

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. Apr.28, 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. March 15, 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and his opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665

(6th Cir.2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir.2010) (quotation omitted).

Plaintiff alleges ALJ error in his treatment of three specific opinions rendered by Dr. Krajcik. ECF Dkt. #16 at 15-16. The first is dated January 20, 2010 and is a checkbox assessment form. Tr. at 1304. Dr. Krajcik checked "yes" by the box stating that Plaintiff's abilities to lift and carry were affected by her impairments. *Id*. He wrote in that Plaintiff could lift/carry up to a maximum of ten to fifteen pounds frequently and occasionally. *Id*. Across from this part of the form was a section requesting that Dr. Krajcik list the medical findings that supported this assessment. *Id*. Dr. Krajcik wrote "right shoulder calcific tendinitis." *Id*. He checked "no" by the boxes stating that Plaintiff's abilities to stand/walk or to sit were affected by her impairments. *Id*. He further opined that Plaintiff could not or could rarely climb, stoop, crouch, kneel or crawl and she could occasionally balance. *Id*. He further opined that Plaintiff could not or could rarely reach, handle and push/pull, she could occasionally perform gross manipulation, and she could frequently feel and perform fine manipulations. *Id*. at 1305. He did not complete the portion requesting that he cite to the medical findings supporting this assessment. *Id*. Dr. Krajcik also indicated that Plaintiff's impairment did not affect her ability to be around heights, chemicals, dust, noise or fumes, but it did affect her ability to be around moving machinery and temperature extremes. *Id.* He did not complete the portions of the form requesting that he explain how the restrictions that he opined affected the checked activities and he did not provide the medical findings supporting these restrictions. *Id.* Dr. Krajcik also opined that Plaintiff needed more rest than that typically provided of a morning break, lunch break and afternoon break. *Id.* He also noted that Plaintiff had been prescribed a brace and a TENS unit. *Id.* He further opined that Plaintiff needed a sit/stand option and he indicated that she experienced severe pain. *Id*. Dr. Krajcik wrote that Plaintiff's persistent shoulder pain, poor range of motion and arm fatigue were additional reasons that would interfere with her ability to work eight hours per day, five days a week. *Id*.

The second assessment is dated February 17, 2011, when Dr. Krajcik completed another checkbox assessment form. Tr. at 1327. He checked "yes" by the box stating that Plaintiff's

-8-

abilities to lift and carry were affected by her impairments and he indicated that she could lift/carry up to a maximum of five pounds only occasionally. *Id*. In the section requesting that he list the medical findings supporting this restriction, Dr. Krajcik wrote "right shoulder DJD (degenerative joint disease) and calcific tendinitis with right arm numbness." *Id*. He checked "yes" by the box asking if Plaintiff's ability to stand/walk was affected and he indicated that Plaintiff could stand/walk less than one hour per day and could not do so without interruption. *Id*. As to the medical findings supporting this restriction, Dr. Krajcik wrote "Same," apparently referring to his medical findings supporting the lifting/carrying restrictions that he opined for Plaintiff. *Id*. He further opined that Plaintiff's ability to sit was not affected by her impairments, but she could not or could only rarely climb, stoop, crouch, kneel or crawl and she could occasionally balance. *Id*. For the medical findings supporting these restrictions, Dr. Krajcik wrote "Same." *Id*. He also opined that Plaintiff could not or could only rarely reach, push and pull, and she could occasionally perform handling, feeling, fine manipulation, and gross manipulations. *Id*. at 1329. As to the medical findings supporting this assessment, Dr. Krajcik wrote "right shoulder pain limits these activities." *Id*. Dr. Krajcik also indicated that Plaintiff's impairment did not affect her ability to be around heights, chemicals, noise or fumes, but it did affect her ability to be around moving machinery, temperature extremes and dust. *Id.* He wrote "Same" as to the medical findings supporting these restrictions. *Id*. He also opined that Plaintiff needed more rest than that typically provided of a morning break, lunch break and afternoon break and he noted that Plaintiff had been prescribed a brace and a TENS unit. *Id.* He further opined that Plaintiff needed a sit/stand option and he indicated that she experienced severe pain. *Id*.

The third assessment form about Plaintiff is dated August 24, 2012. Tr. at 1498. On this form, Dr. Krajcik checked "yes" by the box stating that Plaintiff's abilities to lift and carry were affected by her impairments. *Id*. However, he did not indicate how many pounds Plaintiff was restricted to lifting/carrying and he did not complete the portion of the form requesting that he list the medical findings that supported this assessment. *Id*. He checked "no" by the boxes stating that Plaintiff's abilities to stand/walk or to sit were affected by her impairments. *Id*. He further opined that Plaintiff could not or could rarely climb, balance, stoop, crouch, or crawl and she could

-9-

occasionally kneel. *Id*. He did not complete the medical findings portion for these restrictions. *Id.* He further opined that Plaintiff could frequently handle, feel and perform fine manipulations, she could occasionally reach and perform gross manipulations, and she could not or could rarely push/pull. *Id*. at 1499. He did not complete the portion requesting the medical findings supporting this assessment. *Id*. Dr. Krajcik also indicated that Plaintiff's impairments affected her ability to be around heights, moving machinery and temperature extremes, but did not impact her ability to be around chemicals, dust, noise or fumes. *Id.* He did not complete the portions of the form requesting that he explain how these restrictions affected the checked activities and he did not provide the medical findings supporting these restrictions. *Id.* Dr. Krajcik also opined that Plaintiff needed more rest than that typically provided of a morning break, lunch break and afternoon break. *Id.* He also noted that Plaintiff had been prescribed a brace and a TENS unit. *Id.* He further opined that Plaintiff needed a sit/stand option and he indicated that she experienced severe pain. *Id*.

Plaintiff complains that the ALJ failed to evaluate Dr. Krajcik's opinion as required under 20 C.F.R. § 404.1527(c) because he said nothing in his decision about the length of Plaintiff's treatment relationship with Dr. Krajcik, his knowledge of the specialized treatment that she received and x-ray results and supporting treatment notes. ECFDkt. #16 at 16.

20 C.F.R. § 404.1527(c) provides in relevant part that unless the ALJ attributes controlling weight to a treating source's opinion, he must consider all of the following factors in deciding the weight to give any medical opinion: examining relationship; the treatment relationship, which includes the length of that relationship and the nature and extent of that relationship; supportability of an opinion; consistency of the opinion with the record as a whole; the specialty of the medical source; and other factors, including the amount of understanding of the SSA disability program and the extent that a medical source has with a claimant's entire case record. 20 C.F.R. § 404.1527(c). A medical source's statement on an issue reserved for the Commissioner, such as an assertion that a claimant is "disabled" or "unable to work," is a legal conclusion and not a medical opinion. 20 C.F.R. § 404.1527(d). Such statements are not entitled to any special significance. 20 C.F.R. § 404.1527(d)(3). "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004).

Moreover, the "[r]esponsibility for deciding residual functional capacity rests with the ALJ," not a physician. *Vlach v. Comm'r of Soc. Sec.*, No. 12-2452, 2013 WL 3766585, at *12 (N.D. Ohio July 16, 2013) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)); accord 20 C.F.R. § 404.1546(c) (the ALJ "is responsible for assessing your residual functional capacity"); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide."). To determine an individual's RFC, the Commissioner will review "all of the relevant medical and other evidence" in the record, which may include, but is not limited to, medical source opinions. 20 C.F.R. § 404.1545(a)(3).

Although courts strongly prefer that an ALJ do so, it is not a requirement that the ALJ address in his decision every factor under 20 C.F.R. § 404.1527(c) when determining the weight to give a medical opinion. *See Adams v. Astrue*, No. 1:07-cv-2543, 2008 WL 9396450, at *3, fn. 5, citing *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Here, the ALJ cited to 20 C.F.R. § 404.1527 and the medical improvement standard and indirectly addressed Dr. Krajcik's lack of specialization, one of the factors under 20 C.F.R. § 1527. He considered each of Dr. Krajcik's assessments and addressed the supportability and consistency of Dr. Krajcik's assessments with his own treatment notes and the rest of the record. Substantial evidence supports the ALJ's decision to attribute little weight to Dr. Krajcik's assessments.

Regarding Dr. Krajcik's January 20, 2010 assessment, the ALJ indicated that the only support that Dr. Krajcik provided for this assessment was "right shoulder calcific tendinitis," "persistent shoulder pain, poor range of motion and arm fatigue." Tr. at 56, citing Tr. at 1304-1305. These medical findings do not support the sit/stand option, balancing restriction or a need for rest beyond normal workday breaks as Dr. Krajcik opined.

Further, as to the lifting/carrying and postural limitations of the January 20, 2010 assessment and Dr. Krajcik's February 17, 2011 and August 24, 2012 assessments, the ALJ reasoned that Dr. Krajcik's treatment notes did not support his severe restrictions for Plaintiff. Tr. At 57. As pointed out by the ALJ, on the same date that Dr. Krajcik completed the first assessment, Dr. Krajcik treated Plaintiff for her only complaint of burning and itchy eyes. *Id*. at 1307. Dr. Krajcik diagnosed

conjunctivitis, prescribed medication, and listed Plaintiff's only active problem as anxiety. *Id*. at 1307-1308. An April 22, 2010 treatment note showed that Dr. Krajcik treated Plaintiff for seasonal allergic rhinitis and bronchitis as Plaintiff's complaints were nasal and chest congestion and a sore throat. *Id*. at 1315. The ALJ also cited to a July 14, 2009 consultation with Dr. Kabbara, a pain management specialist, which showed that Plaintiff was able to stand on her toes and heels without difficulty, she had a normal gait, and she had 5/5 in all muscle groups for her lower extremities. *Id*. at 54, citing Tr. at 1262. Plaintiff had no limitation on the range of motion for her shoulder and normal motor power in the upper extremities. *Id*. Dr. Kabbara diagnosed generalized arthritic pain and he noted that her pain had responded best in the past with physical therapy and a TENS unit. *Id.* He advised her to continue with an anti-inflammatory medication and physical therapy at home until she was able to obtain insurance. *Id*. Moreover, a July 29, 2009 treatment note from Dr. Krajcik documented Plaintiff's primary complaints of a sore throat and resolving upper respiratory infection symptoms. *Id.* at 1268. The ALJ also referenced the September 14, 2009 note of Plaintiff's orthopedic specialist who indicated that Plaintiff was complaining of right arm and shoulder pain with increased forearm/elbow pan. *Id.* at 1282. Upon examination, he noted that she had full overhead range of motion and 5/5 strength. *Id*. X-rays showed increased calcification on the right proximal humerous consistent with calcific tendinitis with no bony abnormality. *Id.* His impression was stable right shoulder status post os acromiale excision with calcific tendinitis/lateral epicondylitis. *Id.* Dr. Zanotti recommended that Plaintiff perform physical therapy exercises on her own since she had no medical insurance. *Id*. The evidence cited by the ALJ supports the weight that he gave to Dr. Krajcik's restrictions for Plaintiff.

As to Dr. Krajcik's February 17, 2011 assessment, which was even more severe than his January 20, 2010 assessment, he limited Plaintiff to lifting/carrying only 5 pounds occasionally and to lifting/carrying no amount frequently. Tr. at 1317. He also opined that Plaintiff's abilities to stand/walk were limited as she could only stand/walk a total of less than one hour per eight-hour workday and she could walk no amount of hours without interruption. *Id*. Dr. Krajcik listed right shoulder with degenerative joint disease and calcifinic tendinitis with right arm numbness as the medical findings supporting the lifting/carrying restriction. *Id*. However, Dr. Krajcik simply wrote

-12-

"same" in the area asking for the medical findings supporting his standing/walking restrictions. *Id*. He provides no explanation as to how a shoulder condition would affect Plaintiff's abilities to stand/walk. Moreover, the ALJ noted that in February of 2011, Dr. Krajcik examined Plaintiff as a follow-up to her emergency room visit for right arm numbness and lack of sensation and pain that began in her right shoulder and radiated down her hand. *Id*. at 57, citing Tr. at 1348. Upon examination, he noted that she had slight tenderness over the right back area, but she had normal strength and reflexes in the arms. *Id.* His diagnoses included right arm numbness and degenerative joint disease of the right shoulder with calcific tendinitis. *Id.* Dr. Krajcik noted her only active problem as anxiety. *Id*. at 1349. In addition, the ALJ cited to February 2011 x-rays of the right shoulder showed diffuse degenerative changes involving the joints and lateral humeral head and rotator cuff tendon with no fracture or dislocation and a fairly well-preserved glenohumeral joint. *Id*. at 1331. The ALJ's citation to this evidence constitutes substantial evidence to support the weight that he gave to Dr. Krajcik's assessment.

Dr. Krajcik completed the August 24, 2012 assessment and removed any standing/walking restrictions and indicated that Plaintiff's impairments affected her lifting and carrying. Tr. at 1498. However, he completed none of the medical findings portions of the form to provide support for his assessments. *Id*. Moreover, he left blank the part of the form specifying the number of pounds that Plaintiff could lift/carry frequently or occasionally. In addressing this assessment, the ALJ noted that Dr. Krajcik's July 24, 2012 treatment note showed that Plaintiff had tenderness of the spine but straight leg raises were negative and strength in the lower extremities was only slightly diminished. *Id*. at 57, citing Tr. at 1490. The ALJ also noted that Dr. Krajcik's July 24, 2012 treatment note indicated that Plaintiff complained of left foot numbness after she slammed or banged her foot on something. *Id.* at 57, citing Tr. at 1489. He cited to Dr. Krajcik's note that Plaintiff's muscle tone was normal and inspection and palpation of bones, joints and muscles was also normal and there was no swelling, ecchymosis, erthyema, nodules, deformities or ulcerations. *Id.* at 1481, 1490. Dr. Krajcik had opined that Plaintiff's DDD of the spine most likely caused nerve root compression that created some numbness in the left foot. *Id*. at 1491.

Finally, as to all of the assessments, the ALJ cited to eleven exhibits in the record and concluded that Dr. Krajcik's treatment records generally showed improvement in Plaintiff's right shoulder impairment with no evidence of neurologic dysfunction, motor weakness or severely restricted joint motion. Tr. at 57, citing Tr. at 1018-1034, 1101-1118, 1233-1260, 1264-1269, 1307-1308, 1313-1316, 1319-1320, 1348-1378, 1407-1431, 1488-1490. Some of the exhibits cited by the ALJ are from other doctors who provided clinical findings and assessments of Plaintiff's abilities. For instance, Dr. Zanotti, the orthopedic surgeon, noted on January 21, 2008 that Plaintiff was one-year status post os acroiale excision and she was "doing better and is happy with her strength." *Id*. at 1204. He found that she had full overhead range of motion and strength, with no impingement pain with only slight tenderness around her os acromiale site. *Id.* His impression was "improved right shoulder status post os acromiale excision" and he opined that while she may have continued permanent soreness, it "shouldn't preclude doing most activity except for heavy lifting." *Id.*

In addition, Dr. Togliatti-Trickett, an agency physician, examined Plaintiff on March 13, 2012 and concluded that Plaintiff could perform medium work, although the ALJ gave little weight to this opinion as the medical and other evidence of record documented greater limitations that those opined by her. Tr. at 57, citing Tr. at 1433-1436. The doctor had noted normal shoulder strength and extension in both shoulders, normal grasp, manipulation and fine coordination, normal elbow and wrist flexion and extension, normal ranges of motion in the spine, hips, knees and ankles, and no muscle spasms or atrophy. *Id*. at 1433-1436. She found that Plaintiff was independent with sit to stand without limitations, she had normal ambulation on her heels and toes and she found that Plaintiff would stand and walk throughout the workday without significant limitations. *Id.* at 1439. She opined that Plaintiff's subjective complaints of pain outweighed her physical examination findings. *Id*.

Since the ALJ was not required to specifically address each of the factors in 20 C.F.R. §404.1527(c) and the ALJ's decision shows that he did consider most of the factors, the Court finds no merit to Plaintiff's assertion that the ALJ failed to properly evaluate Dr. Krajcik's opinions. Further, based upon the above, the Court finds that substantial evidence supports the ALJ's decision to attribute little weight to Dr. Krajcik's opinions.

**B.    MENTAL RESIDUAL FUNCTIONAL CAPACITY ("MRFC")**

Plaintiff also asserts that substantial evidence does not support the ALJ's analysis of Plaintiff's MRFC because he failed to adequately consider all of the evidence of record. ECF Dkt. #16 at 17-18. Plaintiff contends that the ALJ should have included more restrictions in his MRFC for her beyond his restriction to a low stress work environment of no high production quotas or fast pace requirements. *Id*. She cites to a MRFC by an agency reviewing physician in 2006 which restricted her to no strict production quotas, and only simple, repetitive tasks in a work environment with few changes and superficial interaction with others. ECF Dkt. #16 at 3, citing Tr. at 53, 1065-1067. She also cites to another reviewing psychologist's opinion that she had moderate difficulties in social functioning and mild difficulties in concentration, persistence and pace. ECF Dkt. #16 at 18, citing Tr. at 278, 282. Plaintiff additionally complains that despite the statement in his decision that he found Plaintiff slightly more limited in concentration, persistence and pace than agency examiner Dr. Smith, the ALJ imposed no restriction as to her concentration, persistence or pace in his MRFC for her. *Id.*

It is the ALJ who is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546(c); *Fleisher v. Astrue*, 774 F.Supp.2d 875, 881 (N.D. Ohio 2011). The RFC is the most that a claimant can still do despite her restrictions. Social Security Ruling ("SSR") 96-8p. It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id*. It is a claimant's "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." *Id*. The Ruling defines a "regular and continuing basis" as 8 hours per day, five days per week, or the equivalent thereof. *Id.*

In determining a claimant's RFC, SSR 96-8p instructs that the ALJ must consider all of the following: (1) medical history; (2) medical signs and lab findings; (3) the effects of treatment, such as side effects of medication, frequency of treatment and disruption to a routine; (4) daily activity reports; (5) lay evidence; (6) recorded observations; (7) statements from medical sources; (8) effects

caused by symptoms, such as pain, from a medically determinable impairment; (9) prior attempts at work; (10) the need for a structured living environment; and (11) work evaluations. SSR 96-8p. The ALJ must provide "a narrative discussion "describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." *Id*. The ALJ must also thoroughly discuss objective medical and other evidence of symptoms such as pain and set forth a "logical explanation" of the effects of the symptoms on the claimant's ability to work. *Id.* However, "[a]n ALJ need not discuss every piece of evidence in the record in order for his decision to stand." *Thacker v. Comm'r of Soc. Sec*., 99 Fed. App'x 661,665 (6th Cir. 2004), unpublished.

  The ALJ addressed the factors in SSR 96-8p as he reviewed Plaintiff's medical history, indicating that in August of 2007, Dr. Krajcik noted that Plaintiff's anxiety was stable on medication and Plaintiff was functioning well. Tr. at 54, citing Tr. at 1127. The ALJ further cited to Dr. Krajcik's August 2009 treatment notes stating that Plaintiff continued to do well on medication and was taking it only intermittently. *Id.* at 54, citing Tr. at 1233. The ALJ also cited to agency examining psychologist Dr. Smith's assessment that Plaintiff was not impaired in relating to others, understanding, remembering and following instructions, or in maintaining attention, concentration, and persistence in the performance of routine tasks. *Id.* at 56, citing Tr. at 1287-1288. The ALJ indicated that he attributed some weight to Dr. Smith's opinion, but he found Plaintiff slightly more limited than Dr. Smith because he found that Plaintiff had moderate limitations in concentration, persistence or pace. *Id*. at 56. The ALJ's moderate limitation was also more restrictive than that opined by all three of the agency reviewing psychologists. *Id.* at 50. The ALJ explained that the weight of the objective and subjective evidence of record supported his moderate limitation and he cited to Plaintiff's reports that she was taking college classes and could focus on her schoolwork, but she slept only three to four hours per night and she had mental preoccupations. *Id*. at 50. In reviewing the MRFC, the Court finds that the ALJ applied the proper standard in determining Plaintiff's MRFC and substantial evidence supports his MRFC.

  Plaintiff complains that despite the ALJ's recognition of a moderate limitation in her abilities to concentrate, persist and keep pace, his MRFC erroneously failed to reflect such a limitation. The

Court finds otherwise. In fact, the ALJ's MRFC did limit her concentration, persistence and pace as he limited her to a low stress environment and defined this to mean "no high production quotas or fast pace requirements." Tr. at 53. The ALJ found that Plaintiff was only "slightly" more limited than Dr. Smith had opined, and the ALJ's MRFC reasonably reflects his finding.

Plaintiff also complains about the ALJ's failure to recognize her difficulties in social functioning and she cites to agency reviewing psychologists assessments on December 27, 2006 and January 25, 2012 as support. ECF Dkt. #16 at 18. However, the ALJ indicated that he gave no weight to the conclusions of the reviewing psychologists and he relied upon Plaintiff's reports to Dr. Smith that she was attending college courses twice per week, she volunteers at a church and babysits her grandchildren regularly as evidence that her social functioning was only mildly limited. Tr. at 50. The Court notes that two other agency reviewing psychologists who provided assessments on October 9, 2009 and October 17, 2011 also opined that Plaintiff had no difficulties in social functioning. *Id.* Further, agency examining psychologist Dr. Smith found that Plaintiff was not impaired in relating to others and the ALJ gave some weight to this opinion. *Id*. at 56. Based upon the ALJ's decision and the evidence of record, the Court finds that substantial evidence supports the ALJ's decision not to include a social functioning limitation in his MRFC for Plaintiff.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety with prejudice.

DATE: August 20, 2015

                                             */s/George J. Limbert*
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE